IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

FILED
FEB 19 1998
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

ENTERED
FEB 19 1998

| | |
|---|---|
| In re: ) | |
| RUBY MAE SIMMONS, ) | |
|     Debtor ) | |
| ) | |
| DONALD L. DIONNE, as ) | |
| Trustee, ) | Civil Action Number |
|     Plaintiff ) | |
| ) | 98-C-0331-W |
| vs. RUBY MAE SIMMONS, ) | |
| a/k/a RUBY SIMMONS ) | |
| RASHID and ABDUL R. ) | |
| RASHID, ) | |
|     Defendants ) | |

**MEMORANDUM OF OPINION***

The Bankruptcy Court has recommended that debtor Ruby Mae Simmons be found in civil and criminal contempt of court for her failure to deliver to the Trustee an automobile and certain monies as ordered by that court. For the reasons which follow, the recommendation will be rejected and the reference to the Bankruptcy Court withdrawn.

I

On July 28, 1997, Ruby Mae Simmons, in a transparent effort to forestall her imminent eviction from certain real estate, filed this action under Chapter 7 of the Bankruptcy Code. The application lists only one creditor - S. Lee Pake. Within the

---

*The court reserves the right to appropriately substitute, revise and/or edit this opinion at a later date. A prompt decision on the pending issues necessitated the filing of the opinion in rough form.

preceding two weeks, Pake had obtained a July 17, 1997, Tuscaloosa Circuit Court judgment vesting title and possession in him to the property occupied by Simmons as a home. Pate held a mortgage on this property, and Simmons defaulted on the mortgage. The circuit court judgment divested Simmons of all title and interest in the property.

The Bankruptcy Court granted Pake's motion for relief for the automatic stay on September 11, 1997. So relieved, Pake has now evicted Simmons from the property.

On October 22, 1997, Simmons moved to dismiss her Chapter 7 petition. She pointed out in her motion that Pate had already taken possession of her home and that she was unable to hire an attorney. The Trustee objected to the dismissal. Simmons filed an amended motion to dismiss the petition on October 29, again pointing out that there is no reason to proceed on the petition, since the only creditor had been relieved from the automatic stay, and that her daughter was being harassed in the efforts to discover and attach Simmons' assets. The Bankruptcy Court denied Simmons' dismissal motion on November 13, 1997.

The Trustee sought leave to employ an attorney to represent him on the day after Simmons filed her petition to dismiss the bankruptcy proceeding. Two days later, the Bankruptcy Court granted the Trustee's application and approved a contingent attorney's fee of 40% of net recovery.

No claims have been filed against the bankrupt estate.

Since the approval of his appointment, the Trustee's attorney has diligently sought

to collect Simmons' assets. Simmons failed to disclose in her petition her ownership interest in a 1994 Cadillac. Her petition reflects that she has $2700 in deposit accounts. The Bankruptcy Court found that the aggregate balance in these accounts was $5816.90.

The Trustee filed two adversary proceedings against Simons in the Bankruptcy Court on October 22, 1997. In the first of these, the Trustee seeks possession of the 1994 Cadillac from Simmons and her husband, Abdul R. Rashid. In the second action, the Trustee seeks to obtain possession of the deposit account monies. On the same day as the suits were filed, the Bankruptcy court issued a Temporary Restraining Order and preliminary Injunction. These orders require Simmons and her husband to turn over the Cadillac to the Trustee; Simmons to turn over the deposit monies to the Trustee; and the financial institutions to turn over to the Trustee the monies in Simmons' deposit accounts.

Simmons has steadfastly denied knowledge of the whereabouts of the Cadillac. She says that she no longer has possession of the deposit account monies. There is no evidence to the contrary.

Simmons failed to appear at three scheduled deposition settings.

On February 5, 1998, the Bankruptcy Court granted the Trustee's motion and ordered that Simmons and her husband be taken into custody by the United States Marshal and held until they submit to depositions by the Trustee.

On February 9, Simmons was apprehended by the Marshal and brought before the Bankruptcy Court. She submitted to the deposition, but she denied knowing the whereabouts of the Cadillac. Most important, she asserted her privilege against self-

incrimination. Notwithstanding the Bankruptcy Court's belief that Simmons is the subject of a bankruptcy fraud investigation by the United States Department of Justice, it apparently required her to proceed with the deposition.

At the conclusion of Simmons' deposition, the Bankruptcy Court found her in contempt for "...her purposeful and nonresponsive answers to deposition questions propounded to her in the court's presence...." Report and Recommendation of the Bankruptcy Court ("RRBC"), p. 4. It ordered that she be incarcerated "...until she was willing to respond to the trustee's deposition questions in a meaningful fashion." *Id.* Simmons was jailed overnight.

On the following day, at a subsequent hearing, Simmons again asserted her privilege against self-incrimination, and she refused to be deposed. This time, the Bankruptcy Court respected her well-established constitutional right. It released her from further incarceration, appropriately recognizing that "...the facts which Ms. Simmons may testify to in response to further deposition questions, even on very minor points, may implicate her Fifth Amendment rights and her potential need for counsel..." *Id.*

Simmons sought to appeal the Bankruptcy Court's order denying her motion to dismiss her Chapter 7 petition. The Bankruptcy Court denied her request for a waiver of the appeal fee, in the face of her uncontested declaration that she is now homeless, impecunious, and disabled.

II

The Bankruptcy Court has recommended that this court place its imprimatur on a puzzling set of developments. With all due respect, the court declines to do so.

In the first place, the record does not disclose good cause for denial of Simmons' petition to dismiss the bankruptcy petition. The only known creditor has apparently obtained all that he is entitled to. Whether he has or not is irrelevant, since he absented himself from the first meeting of creditors and has not filed a claim against the bankrupt estate. *In fact, no one has filed a claim against the estate!*

What, then, is the justification for keeping this case on the presumably congested docket of the Bankruptcy Court? Surely, it cannot be that the Trustee needs to collect the assets of the bankrupt estate - for there are no creditors. What will he do with these assets once they are collected, other than turn over 40% of their value to his attorney?

The Bankruptcy Court plainly erred by denying Simmons' petition to dismiss the petition.

The Bankruptcy Court's error was only compounded by its civil contempt sanctions. Other than its intuitive feeling that Simmons *must know* the location of the automobile, there is no credible evidence that she can comply with the court order requiring her to disclose its location to the Trustee. With respect to the deposit accounts, *the Trustee has already attached them*, pursuant to the October 22, 1997, Temporary Restraining Order and Preliminary Injunction issued by the Bankruptcy Court. How, then, can Simmons comply with the Bankruptcy Court's order that the monies from these accounts be turned over to the Trustee?

Of course, the court does not reach the Bankruptcy Court's recommendation that criminal contempt sanctions be imposed by this court. Suffice it to say that Simmons is clearly entitled to a jury trial on that issue.

By separate order, the Recommendation of the Bankruptcy Court will be rejected. The Order of the Bankruptcy Court denying the debtor's petition to dismiss her bankruptcy petition will be reversed.

Done this 19th day of February, 1998.

_____
United States District Judge
U.W. Clemon